CHARLES L. FARNSWORTH & others *vs.* JAMES G. LOWERY & another.

Norfolk.    March 5, 1881; January 4. — March 2, 1883.

If the report of a commissioner, to whom a petition to establish the truth of exceptions has been referred, states that the bill of exceptions tendered would be conformable to the truth with certain words stricken out, and certain other words added, and the changes suggested are immaterial, the truth of the exceptions will be taken as established.

A declaration in an action of tort alleged that the defendant converted to his own use "a permanent sign, bearing the name of the plaintiff, placed in an advertising case, said sign being the property of the plaintiff." *Held*, that the plaintiff could recover only the value of the sign, and not the value of the case.

Evidence that a person, claiming title in a case, wrongfully removed from the case certain glass plates, and left them with the person in whose custody the case had been, and took the case away, is not sufficient to maintain an action for the conversion of the plates, even if the owner of them was ignorant that they were left with such person.

PETITION to establish the truth of exceptions alleged by the petitioners in fourteen actions severally brought by them against James G. Lowery and John Bleakie, and disallowed by *Bacon*, J., who presided at the trial of the cases in the Superior Court.

The petition was referred by this court to a commissioner, to hear the parties and report his findings. The commissioner reported that the bill of exceptions as tendered by the petitioners would be conformable to the truth, if certain words were added, and certain other words were stricken out. The bill of exceptions so altered was as follows, the words printed in italics being those which the commissioner reported should be stricken out, and the words in brackets being those which the commissioner reported should be inserted:

" These are actions of tort, and by agreement of parties were tried together in the Superior Court, by which each of the several plaintiffs sought to recover for the alleged conversion of a permanent sign bearing his name placed in an advertising case in the post-office room in Hyde Park, Massachusetts, and being there kept by him for the purpose of advertising his business. The pleadings in one case, and the photograph of the bulletin

board used at the trial, may be referred to.* The defendant Lowery, in the summer of 1877, sold to one G. Henry Perkins a large bulletin board, the central portion of which contained a large perpendicular mirror, surrounded by a black-walnut frame, and the board at either side of said mirror and frame comprised eight equal compartments, each of which was twelve inches in length, eight and one half inches in width, and at either end of the mirror was a compartment of a larger size than the ones at the side of the mirror, all of which were enclosed within a heavy black-walnut frame, the said compartments being separated from each other by a horizontal black-walnut bar, which extended from the frame which surrounded the glass mirror to the frame which enclosed the whole board, and forming right angles with both frames, [that part of the bulletin board herein designated as ' compartment ' being of wood, with a board back, except so much thereof as is shown on the photograph as a glass plate set in each, with the name and business of a plaintiff thereon. No evidence was offered in the case, or at the trial, as to the manner in which said plates were attached to said frame or separable therefrom. Nor as to the question whether or not, or how, any part of the woodwork of the board or compartments could be separated from other parts of the board, or of the compartments, squares or spaces (as they were variously styled). But it appeared that said entire board, including the compartments, was at the time of the alleged sale of said spaces or compartments hereinafter named, by one Perkins, to these several plaintiffs, fully constructed and completed, ready for the reception of said plates.]

" *It appears from* the testimony in behalf of the plaintiffs at the trial of said cases [tended to show] that, after Perkins became the owner of the property in question, he sold to each plaintiff, except the plaintiff Pollard, (to whom he made a present, which was accepted,) one of said compartments, *with a glass plate fitting and secured therein*, [and that he then agreed to

---

* The declaration was as follows: " And the plaintiff says the defendants in 1878 converted to their own use a permanent sign, bearing the name of the plaintiff, placed in an advertising case in the post-office room in Hyde Park, said sign being the property of the plaintiff, and being there kept for the purpose of advertising his business." Answer, a general denial.

furnish and insert therein a glass plate,] lettered in the same manner as the sign or business card of the person purchasing as aforesaid, and a right in common with the other plaintiffs and like purchasers and owners in the mirror and frame, or the parts of the ' bulletin board not included within said compartments; that Perkins, according to agreement with the plaintiffs, [furnished and affixed the glass plates, and] placed said board in the corridor of the post-office, after the glass plates had been placed therein as aforesaid; that it was to be there kept for the purpose of advertising the business of the plaintiffs till such time as they (the plaintiffs) would agree between themselves to have it removed to some other place; [there was some evidence tending to show] that Perkins retained no interest whatever in said board, or in anything thereon or connected therewith, and, at the time of the alleged conversion, that these plaintiffs owned the [portions of] *property* [bulletin board,] which they [claimed to have] bought, as hereinbefore stated. Each plaintiff offered to show the value of what he claimed to be his permanent sign, *which* [saying that this] included the plate aforesaid, and the said compartment, or the part of the board on which the glass was placed and secured, as aforesaid, for the purpose intended by him, and the plaintiffs claimed they sought to recover the value of this property, and that these actions were commenced for that purpose; but the court excluded this testimony, and ruled ' that the plaintiffs could recover on their declarations only for the glass and lettering thereon.'

" *It also appeared from the testimony* [there was evidence tending to show,] in behalf of plaintiffs, that one John M. Twichell, who is a deputy sheriff for said county of Norfolk, advertised said bulletin board, and on the 29th day of June, 1878, he *went through the form of selling* [sold the interest of said Perkins in] the same, in the office of the town clerk in said Hyde Park, as the property of said Perkins, who was present at the sale, and then and there stated publicly, in the presence of the defendant Bleakie, ' that the bulletin board was not his, and that he had no interest in it; ' that the defendant Bleakie bid twice on said board afterward, and it was knocked off to him by said Twichell, who acted as auctioneer; that immediately after said sale one of the plaintiffs warned the defendant Bleakie

against touching or in any way interfering with said board; that Bleakie stated to Perkins, a few days after the said sale to him, Bleakie, 'that he bought the bulletin board and would take it away;' that, on the 12th day of July, 1878, the defendant Lowery came into the post-office and said, 'I come to take the bulletin board. It belongs to me. I have a bill of sale of it.' Charles P. Vaughan, the person to whom these remarks were addressed, and whose place of business was then in the post-office room, protested, in behalf of one of the plaintiffs, against the removal of said board; that, as the defendant Lowery commenced to take said board from its assigned place and position in the post-office room, Vaughan went off to look for and report to the plaintiff, who directed him to prevent the removal of said · board; that when Vaughan and this plaintiff returned to the post-office, the said bulletin board had been placed in an express wagon in front of the post-office, but the glass plates had been taken therefrom [by the defendants, who exercised reasonable care, doing them no damage, and placed them on his counter,] while Vaughan was absent, as aforesaid; both defendants, and the expressman who was in charge of the team, were then near the said wagon, and the defendants went off together, after the said wagon and board, which has never been returned. Vaughan then returned to his place of business, and he testified, on cross-examination, 'that he there found, on the corner of his counter, after the defendants and said team had departed, the glass plates bearing the names of the plaintiffs, and which belonged in the bulletin board, as aforesaid; that he put the glass plates away into a closet, where they were at the time of the trial without instructions from any one; *that, in doing this, he acted on his own responsibility, and that no person called for said plates up to that time ; that the majority of the plaintiffs were not aware that the glass plates, bearing the names of the plaintiffs aforesaid, were left in the post-office room, or in Hyde Park, and they believed that all parts of said board, including said glass, had been taken away from said room by the defendants, or either of them, till they heard the testimony of Vaughan as aforesaid,* [except as appears from the fact that he was left in charge of the board and forbade its removal, or the other foregoing statements, and that no one of the plaintiffs had taken possession of them; nor did it

appear that all of the plaintiffs knew they had been left there.]
The plaintiffs did not in any way admit that Twichell had any
right to sell any part of the property in question, but they
claimed that the sale by him was unauthorized and irregular.
At the conclusion of the testimony for the plaintiffs, the court
ruled, by request of the defendants' counsel, that there was no
evidence of a conversion, and instructed the jury to return a
verdict for the defendants in each case; whereupon verdicts
were so returned.   To the rulings and instructions aforesaid the
plaintiffs except, and they respectfully pray that their excep-
tions may be allowed."

The judge who presided at the trial made, upon the bill of
exceptions tendered to him, the following certificate:

" At the trial I ruled that the plaintiffs could not, under
their several pleadings, recover for anything except the value
of the letters, glass signs secured in and to the bulletin board
or advertising case, and also that there was no evidence for
the jury of any conversion of said glass signs by the defendants,
to which ruling the plaintiffs duly excepted.   The plaintiffs
not having presented these exceptions in this bill with reason-
able fairness and precision, and having neglected so to amend
this bill of exceptions as properly to present said exceptions
for allowance, I return this bill of exceptions to the files dis-
allowed."

The commissioner also reported that the judge who presided
at the trial prepared a bill of exceptions, which he was wil-
ling to allow, and which was a substantially true statement of
the facts in the case, unless certain words should have been
inserted.   The judge's draft, with the words which the com-
missioner suggested might be material printed in brackets, was
as follows:

" These are actions of tort, and by agreement of parties were
tried together, by which each of the several plaintiffs sought to
recover for the alleged conversion of a permanent sign bearing
his name, placed in an advertising frame or case, in the room of
the post-office, in Hyde Park, and being kept there for the pur-
pose of advertising his business.   The pleading in one case may
be referred to as being the same in substance in each of the
other cases, and also a photograph of said frame or bulletin

board used at the trial. The evidence tended to show that said bulletin board, placed as aforesaid, containing in the several compartments glass plates fitted and secured therein, lettered like a sign or business card of each of said plaintiffs, as shown in said photograph, and the plaintiffs claimed to recover, in these actions, the value of the plate-glass sign aforesaid, and also the value of that part of the frame on which the sign was placed and secured, and that the word 'sign' in the declaration included not only the glass plate, but also that part or compartment of the frame or case to which the plate was secured and which held it in place.

"[And there was evidence in the case tending to show that the plaintiffs had severally purchased of one Perkins, and so owned, at the time of the alleged conversions of that part of the woodwork or frame, claimed as aforesaid, or some part of said frame other than the glass plate.]

"But the court ruled that the plaintiffs could only recover under their several declarations for the glass plates and lettering thereon, and excluded evidence of the value of any part of the frame or case to which said glass plates were secured, to which rulings and exclusions of evidence the plaintiffs excepted. There was another action of tort for the conversion of the frame or case to which these glass plates were secured, brought by these plaintiffs and others, which was tried at the same time, but in this last-named case the jury disagreed. The declaration in said case may be referred to, and is annexed hereto. The only evidence that tended to show a conversion of said glass plates or signs was that the said frame, case or bulletin board having been sold as the property of one Perkins (and whether rightfully so sold was one of the questions tried in the case in which the jury disagreed) to the defendant Bleakie, the defendants under such sale (and) claiming to hold said bulletin board thereunder, took from said case in the post-office room aforesaid said glass signs, and, placing them carefully upon the counter in said room, left them there, and carried away said bulletin board, frame or case, and did no other act or thing tending to show a conversion thereof. The court, at request of defendant, ruled that this did not prove a conversion, and instructed the jury to return a verdict for the defendants in all of said cases,

and said verdicts were so returned, and to said ruling and direc-
tion of the court the plaintiffs severally excepted."

    *W. B. Gale & J. E. Cotter*, for the petitioners.

    *C. Sewall & F. D. Ely*, for the respondents.

    FIELD, J.    We think the substantial truth of the exceptions
presented has been established, and that the matters which the
commissioner has found should be stricken out or inserted are
immaterial.    The exceptions proved do not in our view differ
materially from the exceptions which the presiding justice was
willing to allow.

    The first ruling excepted to is, " that the plaintiffs could re-
cover on their declarations only for the glass and the lettering
thereon."    The declarations were for the conversion of " a per-
manent sign bearing the name of the plaintiff, placed in an ad-
vertising case in the post-office room," &c.    In the construction
of pleadings it may sometimes be necessary for the court to
consider the subject matter as it appears in evidence, and if,
when applied to the subject matter, the meaning of the plead-
ings is doubtful, it is the duty of the party pleading to ask leave
to amend them so that the meaning may be made clear.    The
declarations are for the conversion of a sign placed in a case,
and, as applied to the evidence, might well be held to include
only the glass, which, with the lettering thereon, was placed in
the case, and not to include any part of the case itself.

    The remaining exception is to the ruling of the court that
there was no evidence of a conversion of the glass plates.
There was evidence that the defendants, under a claim of prop-
erty in the advertising case, removed the glass plates from it
and placed them on the corner of a counter in the post-office
room, where they were found by one Vaughan, whose place of
business was in this room, and they have been since kept by
him in a closet " without instructions from any one."

    It does not distinctly appear in whose custody this case was,
after it was placed in the post-office room, but, so far as appears,
it was in the custody of Vaughan, who it seems acted for one
of the plaintiffs in forbidding the defendants to remove it.    No
evidence appears that the defendants claimed any property in
the glass plates.    It is not necessary to consider what were the
rights of property which each plaintiff had in the advertising

case, or what the form of remedy is, if the defendants have wrongfully taken and carried it away.

The question here presented is of an alleged wrongful removal of the glass plates from the case by the defendants, under a claim of owning the case and having a right to take it down and carry it away. There was evidence that Perkins retained no interest in the case, and therefore none could be taken and sold on an execution against him, and therefore the defendants had no right, title or interest in the case. For the purpose of deciding the question of law presented, it must therefore be assumed that the defendants had no right to take down the case and carry it away, and that the removal by them of the glass plates from the case was wrongful. It is contended that this wrongful removal of the plates from the case was a conversion, because it is an exercise of dominion over them inconsistent with the rights of the plaintiffs. But the dominion which the defendants exercised in removing the plates from the case was exercised, not by virtue of any claim of property in the plates, or of any right of possession or control over the plates, but by virtue of a claim of a right of property in the case with which the plates were connected, and there is no evidence recited which would have warranted the jury in finding that the defendants removed the plates from the case for any other purpose than that of separating the property of the plaintiffs from the case which the defendants claimed to own, that they might take and carry away only the property they claimed. Such a wrongful intermeddling with plates, we think, does not amount to a conversion. There was no intent to deprive the plaintiffs of their property in, or of their rights of possession over, the plates, and no actual deprivation. The removal was incidental to the taking and carrying away of the case, and the plates continued in the custody of the person who, so far as appears, was in possession of the room in which the case was placed, and had the custody of the case. The evidence of a conversion is no stronger than if it proved that a stranger without right had taken the plates from the case and left both in the room. This would be a trespass, but not a conversion. The want of knowledge of some of the plaintiffs that the plates were left with Vaughan is immaterial, if he were the person who was in possession of

the room where the advertising case was, and had the custody of it. *Fouldes* v. *Willoughby*, 8 M. & W. 540. *Simmons* v. *Lillystone*, 8 Exch. 431. *Strickland* v. *Barrett*, 20 Pick. 415. *Spooner* v. *Holmes*, 102 Mass. 503, 507. *Exceptions overruled.*