O. J. GUDE CO. v. FARLEY.

(Supreme Court, Appellate Term. December 13, 1898.)

CONVERSION—REMOVAL OF PROPERTY—CLAIM OF OWNERSHIP.

A lessor, having asked a sublessee to remove a sign from the roof, where the former claimed it had no right to be, on the refusal of the sublessee so to do, removed it himself, and had it stored in his cellar, and then notified the sublessee that it was at his disposal. *Held* not to amount to a conversion, since the notice amounts to a positive recognition of the sublessee's ownership of the sign, and is inconsistent with the idea of the lessor's exercising any dominion over it.

Appeal from municipal court, borough of Manhattan, First district.

Action by the O. J. Gude Company against Thomas M. Farley for a conversion. From a judgment for defendant, rendered on a trial by the court without a jury, plaintiff appeals. Affirmed.

Argued before BEEKMAN, P. J., and GIEGERICH, J.

A. S. Gilbert, for appellant.

Robert H. Roy, for respondent.

GIEGERICH, J. The defendant's grantor, one James McEnery, by indenture bearing date the 27th day of March, 1897, demised and leased to one Daniel McMenamey the building and its appurtenances located at Nos. 106 and 108 Myrtle avenue, in the then city of Brooklyn, for a term of one year from the 1st day of May, 1897, at an annual rental of $1,350, with the privilege of renewal yearly for the four succeeding years, upon compliance with certain conditions. The lessee therein covenanted that he would neither assign

said lease, nor underlet the whole or any part of the premises described, except the second and third floors, nor make any alterations therein without the written consent of the lessor, under penalty of forfeiture and damages; and that at the expiration of such lease he would surrender to the lessor, in good condition, possession of the said premises. Notwithstanding this, the lessee, on the 4th day of December, 1897, without the consent of the lessor, and in violation of the terms of the lease, signed and delivered to the plaintiff a paper writing granting to the latter the use of the roof of said building for a period of five years from January 1, 1898, "with the right of placing, painting, erecting, and maintaining any and all advertising signs" thereon. The plaintiff, under authority of such instrument, on or about December 30, 1897, erected upon said roof a sign 10 feet high and about 25 feet long, and constructed of wood and iron. About a day later, to wit, December 31, 1897, the fee in said premises was transferred by defendant's grantor to defendant, subject, however, to all the terms contained in the aforesaid lease. The defendant thereupon, and after McMenamey and the plaintiff had refused to comply with his request, had the sign removed, and stored in his cellar, and notified the plaintiff that it was at its disposal. This action was then brought to recover the value of the sign, plaintiff claiming that it had been converted by defendant to his own use.

It appears from the evidence that McMenamey occupied only the first or store floor of the premises thus demised, which were 25 feet square, and three stories high. According to a stipulation entered into upon the trial, it also appears that defendant's grantor collected no rent from the tenant (McMenamey) at any time after the erection of the sign, and that no rent became due to him after that date. The remarks of the trial justice, wherein he concludes that the facts, as proved, did not constitute a conversion, are fully concurred in by me. "If a man who has no right to meddle with goods at all takes them, and removes them from one place to another, an action may be maintained against him for a trespass; but he is not guilty of a conversion of them unless he removed the goods for the purpose of taking them away from the plaintiff, or of exercising some dominion or control over them for the benefit of himself or of some other person." 2 Add. Torts (6th Ed.) p. 626, § 519. "It has never yet been held," observes the learned author, "that a single act of removing a chattel independent of any claim over it, either in favor of the person himself or any one else, amounts to a conversion." Id. p. 627. The principle is an elementary one, and is succinctly defined by Greenleaf, viz.: "Every unlawful taking, with intent to apply the goods to the use of the taker, or of some other person than the owner, or having the effect of destroying or altering their nature, is a conversion. But if it does not interfere with the owner's dominion over the property, nor alter its condition, it is not." 2 Greenl. Ev. (15th Ed.) § 642.

In Houghton v. Butler, 4 Term R. 364, where a gate had been wrongfully erected by the plaintiff so as to obstruct the defend-

ant's right of way, and the latter took it down, and put it in a convenient place for the use of the plaintiff, it was held that this did not amount to a conversion.

A similar doctrine prevailed in Fouldes v. Willoughby, 8 Mees. & W. 540, where the plaintiff was requested by the defendant, the manager of a ferryboat upon which the former was a passenger, to leave the boat, and take ashore his horses, and upon his refusal to comply therewith the defendant removed the horses to a stable, and they were not delivered up on the following day when sent for by plaintiff. Later, however, a message was sent by their custodian to the effect that plaintiff might have his horses upon payment for their keep, and that, in the event of his failure to do so, they would be sold to satisfy the cost of their maintenance. The horses were accordingly sold at auction, and an action in trover was then brought by the plaintiff. The defense was that the plaintiff had misconducted himself while on board, and that the horses were put ashore for the purpose of inducing him to follow them. On the trial, at nisi prius, the judge charged "that the defendant, by taking the horses from the plaintiff, and turning them out of the vessel, had been guilty of a conversion, unless they thought the plaintiff's conduct had justified his removal from the steamboat, and he had refused to go without his horses." The court of exchequer, on a rule to show cause, held that this amounted to a misdirection, in that the mere wrongful asportation of a chattel did not amount to a conversion, unless its taking or detention was with intent to convert it to the use of the taker, or some third person, or unless the act had the effect either of destroying or changing the quality of the chattel. In the course of his opinion (pages 544, 547), Lord Abinger said:

"It is a proposition familiar to all lawyers that a simple asportation of a chattel, without any intention of making any further use of it, although it may be a sufficient foundation for an action of trespass, is not sufficient to establish a conversion. * * * In order to constitute a conversion, it is necessary either that the party taking the goods should intend some use to be made of them by himself, or by those for whom he acts, or that, owing to his act, the goods are destroyed or consumed, to the prejudice of the lawful owner. * * * But it has never been held that the single act of removal of a chattel independent of any claim over it, either in favor of the party himself or any one else, amounts to a conversion of the chattel."

Baron Alderson (page 549) recognized as the true principle the statement of counsel in Shipwick v. Blanchard, 6 Term R. 299, that, "in order to maintain trover, the goods must be taken or detained, with intent to convert them to the taker's own use, or for the use of those for whom he is acting"; but with the additional qualification that, in the event of their destruction while in the custody of the taker, the latter would be guilty of a conversion. In summing up the precise situation, he, at page 549, said:

"But the question here is, where a man does an act, the effect of which is not for a moment to interfere with my dominion over the chattel, but, on the contrary, recognizing throughout my title to it, can such an act as that be said to amount to a conversion? I think it cannot."

Baron Gurney (page 550) also disagreed with the position that the defendant's act alone of taking the horses out of the boat, and putting them ashore, amounted to a conversion. The following is a literal quotation from the views expressed by Baron Rolfe:

"In every case of trover there must be a taking with the intent of exercising over the chattel an ownership inconsistent with the real owner's possession. Now, suppose instead of actually removing the horses from the boat, the defendant waived his hand or cracked a whip, and so made the animals jump out of the boat, would that amount to a conversion? I do not see how, on the hypothesis of Mr. Watson, any other answer could be given than in the affirmative; for, if the principle be that anything that controls the position of the chattels while in my possession will amount to a change of ownership, I do not see how the effecting of that change by frightening the animal which constitutes my property is distinguishable from any other means adopted for the same purpose. Again, suppose I, seeing a horse in a ploughed field, thought it had strayed, and, under that impression, led it back to pasture, it is clear that an action of trespass would lie against me; but would any man say that this amounted to a conversion of the horse to my own use? Or suppose a man drives his carriage up into an inn yard, and the innkeeper refuses to take it and his horses in, but turns them out into the road, could it be said that he thereby converted them to his own use? Surely not."

The foregoing rules were distinctly recognized and applied in the case of Eldridge v. Adams, 54 Barb. 417. There the plaintiff left to the defendant a buggy which he had hired for a year from one Jenkins. The wagon was injured while in use by one Hall, and the plaintiff, after its return to him, sent it to the shop of a man named Francisco, for repair. Hall afterwards promised the plaintiff that he would pay for such repairs, and the defendant became his surety therefor. Subsequently the defendant and Hall had the wagon removed to another shop for repair, and, before suit was brought, returned it to the custody of the plaintiff. A verdict was directed for the plaintiff, subject to the opinion of the court at general term, but the latter tribunal held that the defendant was not liable, and accordingly directed judgment in his favor. Held by the court (per James, J., page 423):

"The defendant in this case was guilty only of a mere asportation of the buggy. He did not interfere with the plaintiff's dominion over the buggy. His title was recognized and acknowledged throughout. It was not taken or detained with the intent to convert it to the defendant's use, or the use of any one else. He assumed no ownership over it. It was not injured while in his possession. In fact, there was no element in the proof on which a conversion could be predicated."

The defendants in Farnsworth v. Lowery, 134 Mass. 512, wrongfully removed certain glass plates from a case to which they claimed title, and of which they took possession, and left said plates in the custody of the person who had theretofore held the case. Held insufficient to maintain an action for conversion of the plates, even if plaintiffs were ignorant of their whereabouts. The opinion there is by Field, J., who thus sums up the evidence:

"It is contended that this wrongful removal of the plates from the case was a conversion, because it is an exercise of dominion over them inconsistent with the rights of the plaintiffs. But the dominion which the defendants exercised in removing the plates from the case was exercised, not by virtue

of any claim of property in the plates, or of any right of possession or control over the plates, but by virtue of a claim of a right of property in the case with which the plates were connected; and there is no evidence recited which would have warranted the jury in finding that the defendants removed the plates from the case for any other purpose than that of separating the property of the plaintiffs from the case which the defendants claimed to own, that they might take and carry away only the property they claimed. Such a wrongful intermeddling with plates, we think, does not amount to a conversion. There was no intent to deprive the plaintiffs of their property in, or of their rights of possession over, the plates, and no actual deprivation. The removal was incidental to the taking and carrying away of the case, and the plates continued in the custody of the person who, so far as appears, was in possession of the room in which the case was placed, and had the custody of the case. The evidence of a conversion is no stronger than if it proved that a stranger without right had taken the plates from the case, and left both in the room. This would be a trespass, but not a conversion." Page 519.

The foregoing principles were also applied in Shea v. Milford, 145 Mass. 525, 14 N. E. 769, where the town, one of the defendants, contracted with the firm of Mead, Mason & Co. for the construction of a granite stone building, and the latter sublet the stonework thereon to the plaintiff. Before the structure was completed the plaintiff was requested by both the contractors and the town's agent to remove to another part of the land certain chattels which had been used by him in the performance of his work, and upon his refusal the defendants, without unnecessary damage, removed the same to another part of the land. It was there held by W. Allen, J., that, even had the plaintiff an unrevoked license to have the chattels on the land, an action for conversion could not be maintained.

"The evidence," he says, "negatived a conversion of the property by the defendants, and showed that they had no title to it, assumed no dominion over it, and did nothing in derogation of the plaintiff's title to it, and that all that was claimed by the defendants was the right to remove the goods from one place to another on their own land. All that was done was in assertion of their right in the land, and in recognition of the plaintiff's right of property in the chattels. If the plaintiff had the right to occupy the land which he claimed, the act of the defendants was wrongful, and they would be liable to the plaintiff for damages for breach of contract, or for the trespass, but not for the value of property converted to their own use."

I think the principle is fairly deducible from these authorities that the mere removal of a chattel from one place to another, in the absence of any claim of ownership or the exercise of any dominion thereover, does not amount to a conversion. It might at first sight be claimed that the foregoing views are at variance with the principles of the decision in Roe v. Campbell, 40 Hun, 50, but there the facts were entirely different. The plaintiff had sold a buggy conditionally to one Broderick, retaining in himself the title thereto until a note given for the purchase price should be met. Before the note matured, however, Broderick sold the wagon to the defendant, and the plaintiff brought a suit for conversion. The distinction becomes apparent from a reading of the following portion of the opinion, delivered by Smith, P. J., found on page 52:

"If the defendant, on being notified of the plaintiff's title and demand of possession, had simply stored the wagon in his barn at Wolcott, where it was

at the time of the demand, while he was availing himself of the plaintiff's consent to take time to consider whether he would comply with the demand, he would not have been liable."

In the case at bar the defendant seems to have acted upon the theory that the agreement between plaintiff and the lessee operated as a subletting, rather than a license, thus causing the prohibitive clause against subletting contained in the lessor's lease to become operative, and, by virtue of the deed, vesting in the defendant title to the sign, upon its annexation, as part of the freehold, and that, therefore, the plaintiff had neither property, general or special, nor the immediate right of possession, therein or thereto. Whether or not this position is well taken need not be considered in view of the conclusion above reached anent the defendant's freedom from liability for his acts. The latter having at the very outset requested the plaintiff and McMenamey to remove the sign from the roof, and they having failed to comply therewith, its removal was obviously not made for the purpose of depriving the plaintiff of ownership therein, but merely to change its position from a part of the building where defendant claimed it had no right to be. Under these circumstances, and in view of the fact that the defendant apprised plaintiff that the sign was subject to its order, of which the latter did not avail itself, it is clear, upon principle and authority, that the defendant's acts in the premises did not amount to a conversion. Such notice by the defendant to the plaintiff was, in my opinion, a positive recognition of the latter's ownership of the sign, and inconsistent with the idea of the former's exercising dominion over it. For these reasons, to my mind, the judgment should be affirmed.

Judgment affirmed, with costs.

BEEKMAN, P. J., concurs.