## DOW-ARNESON COMPANY v. CITY OF ST. PAUL AND OTHERS.[1]

February 23, 1934.

No. 29,588.

[1]Reported in 253 N. W. 6.

*Harris Richardson, L. E. Matteson,* and *Thomas W. McMeekin,* for appellant.

*Lewis L. Anderson* and *Louis P. Sheahan,* for respondents.

*LORING, Justice.*

This case arose out of transactions connected with the widening of Third street in St. Paul. Lot one, auditor's subdivision No. 35, Ramsey county, was acquired by the city in condemnation proceedings. October 20, 1927, after the proceedings were started, the owner leased to plaintiff a part of the second floor of the building located on lot one. The lease provided in part:

"It is understood and agreed between the parties that said property is subject to condemnation proceedings by the city of St. Paul in connection with the widening and improvement of East Third street, and the lessee agrees that in the event any condemnation takes effect during the term of this lease, and it is compelled to vacate said premises, that it will save the lessor harmless by reason of any expense or damage incident to said moving. The lessee agrees to vacate said premises when, as and if ordered by the city of St. Paul at the same time the lessor may be compelled to vacate said premises in said condemnation proceedings."

Plaintiff was included in the proceedings and awarded no damage. The owner was awarded $45,000, which she finally accepted August 9, 1928. At the time of the acceptance the owner gave a deed to the city. Plaintiff was immediately advised by the city that the building would be wrecked and notified and requested to vacate. It refused. Among other things it contends that because the city received a deed the clause in the lease under which it promised to vacate became inapplicable. Repeatedly the plaintiff was notified to vacate its rooms and remove its property. It sought in the courts to prevent the city from entering upon the premises. All other occupants of the building vacated the premises and part of the building was torn down. Finally, November

26, 1928, city officials went to the premises, expelled the plaintiff's officers and employes, and took possession of the leased rooms. Prior to this the city had requested plaintiff to take away its personal property. The request was renewed on November 26. Plaintiff by its officer in charge refused, said he was not moving. The city officials offered to take the property to any place plaintiff might designate. Plaintiff, speaking through its officer, said, in substance, that the city of St. Paul might do anything it pleased with the personal property, and that he did not care what the city did with the property; that it was the city's, and it could do with it what it wanted to. Thereupon the property was removed by the city officers to buildings owned by the city and ultimately stored in a public warehouse. Plaintiff was repeatedly informed that the property was held for it and that it could have it at any time.

Plaintiff brought an action for conversion of the personal property removed by the city. On the first trial the plaintiff dismissed. On the second a jury found for defendants. A new trial was granted for a reason not disclosed by the record. A jury again found for defendants, and after a denial of plaintiff's motion for a new trial the case comes here on appeal by plaintiff.

■ The defendants prevailed in the trial court, and therefore we must regard the evidence in the light most favorable to them. The first and most important claim made by the plaintiff is that the evidence shows conversion as a matter of law. Much space in the briefs is devoted to a discussion of the law relating to obtaining possession of real property. This action, however, is purely one for the conversion of personal property, and we are not confronted with any question as to the rightfulness of the defendants' conduct in gaining possession of the premises. The city claims authority under its charter and under L. 1921, c. 219, to enter upon premises acquired by condemnation without resort to an action in unlawful detainer. Whether or not the defendants' conduct was in contravention of the forcible entry and unlawful detainer statute is not a question presented by this record. We are concerned only with the alleged conversion and are viewing defendants' conduct in taking possession of the premises only as it may throw light on that

question. Did the defendants after taking possession of the real property exercise a dominion over the personal property inconsistent with the owner's right or in repudiation of it, or was there a destruction of the property? Merz v. Croxen, 102 Minn. 69, 112 N. W. 890. Here there was no repudiation of the owner's rights. It was at all times being urged to exercise those rights and to take possession of its property and to dispose of it in accordance with its wishes. The defendants had no wish to use the property or to dispose of it except as plaintiff desired. The city wanted nothing but possession of the real estate, to which, on the face of things, the plaintiff had no right. The plaintiff had bound itself to give up the premises to the city upon demand. The fact that the city took a deed when its condemnation proceedings had culminated did not change the fact that title passed to it under the condemnation. It might fortify itself with the deed without in any way forfeiting what had been acquired by the proceedings, the legality of which is not seriously questioned. Nor does the fact that it presented the deed for registration defeat the law which declares title to vest in it upon payment of the award. L. 1921, c. 219, § 1.

We see no exercise of dominion over the personal property which as a matter of law was inconsistent with the owner's right of dominion. The plaintiff had no right of dominion which in effect justified it in having its personal property on the city's real property. In Shea v. Milford, 145 Mass. 525, 527, 14 N. E. 769, 770, similar questions were before the court. It said:

"The property of the plaintiff alleged to have been converted by the defendants was on land belonging to and occupied by the defendant town. The town requested the plaintiff to remove the property to another place on the same parcel of land, and the plaintiff refused to do so, whereupon the defendants removed it to the place assigned by the town. The instruction, that, if the plaintiff unreasonably neglected to remove the property, and the defendants removed it to another part of the lot, doing no unnecessary damage, the plaintiff could not recover, was sufficiently favorable to the

plaintiff, even if he occupied under a license which had not been revoked. The evidence negatived a conversion of the property by the defendants, and showed that they claimed no title to it, assumed no dominion over it, and did nothing in derogation of the plaintiff's title to it, and that all that was claimed by the defendants was the right to remove the goods from one place to another on their own land. All that was done was in assertion of their right in the land, and in recognition of the plaintiff's right of property in the chattels. If the plaintiff had the right to occupy the land which he claimed, the act of the defendants was wrongful, and they would be liable to the plaintiff for damages for breach of contract, or for the trespass, but not for the value of the property converted to their own use. Farnsworth v. Lowery, 134 Mass. 512; Fouldes v. Willoughby, 8 M. & W. 540; Heald v. Carey, 11 C. B. 977. It is immaterial whether the plaintiff had an unrevoked license to occupy the land, and we express no opinion upon that question."

Other cases in point are Browder v. Phinney, 37 Wash. 70, 79 P. 598, 599; Hammond v. Sullivan, 112 App. Div. 788, 99 N. Y. S. 472; O. J. Gude Co. v. Farley, 25 Misc. 502, 54 N. Y. S. 998; Lucas v. Durrence, 25 Ga. App. 264, 103 S. E. 36; Clark v. Grand Rapids Tr. Co. 241 Mich. 379, 217 N. W. 10; Mattice v. Brinkman, 74 Mich. 705, 42 N. W. 172. In the last case cited it was said in substance that courts do not encourage obvious attempts to effect sales by suits for conversion.

■ We come to the question of destruction. Here again we must look to the evidence most favorable to the defendants. They claim, and the jury was justified in believing, that they employed experienced and careful agencies in the packing and removal of the property and that it was carefully handled. Scrutiny of the record indicates that the jury might well believe that such losses as occurred were trivial and that any damage that occurred was only of such inconsequential character as ordinarily occurs in the handling by experienced men of property of like character. Some of the property had apparently been damaged in fires and removals which had previously occurred.

The situation gave rise to a relationship in the nature of a constructive bailment. Wentworth v. Riggs, 159 App. Div. 899, 143 N. Y. S. 955, 956; Burns v. State, 145 Wis. 373, 380, 128 N. W. 987, 140 A. S. R. 1081; Gates v. Powell, 77 Mont. 554, 558, 252 P. 377. Here, then, we have the city in the situation of a gratuitous bailee and liable only for failure to exercise good faith or that degree of care required of such bailee. We find evidence of no such destruction, lack of care, or good faith as would compel a jury to conclude there was a conversion.

■ The plaintiff made numerous requests to charge. Most of them were based upon the erroneous assumption that defendants as a matter of law had converted plaintiff's property, or that the city had not acquired lot one by condemnation or in compliance with the Torrens system. Some requests were based upon the theory that the relation of landlord and tenant existed between the city and plaintiff. As we have heretofore pointed out, none of these theories was sound. The charge as given by the trial court was evidently very carefully prepared. It was comprehensive and fair. It stripped the case of apparent complications and left the jury with a clear understanding of the simple issues involved. It was fully as favorable to plaintiff as it legally might be.

Exceptions were also taken to rulings upon evidence. We find no error.

Order affirmed.

*DEVANEY, Chief Justice,* absent in attendance upon board of pardons, took no part.