HAROLD H. PERCANSKY AND ANOTHER,
*d. b. a.* DU NORD TAVERN, v. I. HENRY LEVINE.[1]

June 27, 1952.

No. 35,598.

[1]Reported in 54 N. W. (2d) 110.

*Bauers & Carlson* and *Charles E. Carlsen, Jr.*, for appellant.

*D. W. George,* for respondents.

THOMAS GALLAGHER, JUSTICE.

Action by Harold Percansky and Warren H. Steeves, doing business as the Du Nord Tavern, located at 2701 East Twenty-fifth street, Minneapolis, for the conversion by defendant of certain of plaintiffs' goods, chattels, and assets at the above place of business on May 23, 1947. The jury returned a verdict for plaintiffs in the sum of $1,550. Defendant appeals from the order denying his motion for judgment notwithstanding the verdict or a new trial.

Defendant denied the conversion and alleged that plaintiffs had previously delivered to defendant a bill of sale covering the assets referred to, in consideration of defendant's release of plaintiffs' obligation to defendant on a note in the sum of $12,800.

As a counterclaim, defendant alleged that on or about May 23, 1947, plaintiffs were indebted to him in the sum of $12,400 by virtue of a promissory note; that to settle this indebtedness the parties on that date entered into an accord and satisfaction thereof based upon plaintiffs' delivery to defendant of a bill of sale covering the business, fixtures, equipment, name, and good will of the Du Nord Tavern, and plaintiffs' promise to deliver forthwith to defendant an assignment of plaintiffs' interest as lessee in a lease of the premises in which the tavern was conducted; that plaintiffs thereafter refused to deliver the described assignment of lease, and that as a result the owner of the premises regained possession thereof; that the business was of no value without a lease and could not be sold; that in consequence it was closed for a considerable period of time, with resulting destruction of the good will thereof; and that because of plaintiffs' failure to perform their part of the agreement, as described, defendant suffered damages in the sum of $12,800, for which he prayed judgment against plaintiffs.

On appeal, defendant contends that (1) as a matter of law there was no conversion, and (2) the trial court erred in refusing to in-

struct the jury that plaintiffs were indebted to defendant in the sum of $12,390, the balance due on plaintiffs' note, less any damages occasioned by the alleged conversion.

The facts are as follows: On April 10, 1947, plaintiffs were indebted to defendant on their promissory note in the sum of $12,800, secured by two chattel mortgages on the fixtures and equipment of the Du Nord Tavern. The note provided for monthly payments of $500 each commencing May 15, 1947.

On May 20, 1947, Steeves delivered to defendant plaintiffs' check in the sum of $500 drawn on the University National Bank covering the first payment on the note. He testified that at that time he advised defendant that there would not be sufficient funds on deposit to cover this check until the following Monday, May 26, 1947, and defendant agreed to hold it until that date. Defendant denied this and testified that at Percansky's direction on May 22, 1947, he deposited $90 in plaintiffs' account in the University National Bank, which, with the funds on deposit therein, was sufficient to cover the check, and that he cashed it the same date.

On May 23, 1947, at the office of defendant, a bill of sale covering the tavern fixtures and equipment was drawn by defendant in the presence of Percansky. It was not dated, and the space for the purchaser's name was left blank. It provided that "The lease on said premises [2701 East 25th street, Minneapolis] is included herein." The bill of sale was not executed at that time.

On the same date, defendant and Percansky went to the home of Steeves. There the bill of sale was executed by Percansky. Steeves testified that he also executed it then, but defendant testified that Steeves, Percansky, and defendant first proceeded to the tavern, where Steeves was to meet his wife, since he wished to confer with her before executing the instrument.

There is a dispute as to why this bill of sale was executed. Steeves testified that it was given as security for the $500 check above described and was to be effective only in the event the check was not honored on May 26, 1947. Defendant denied this and testified that the bill of sale was absolute and given in return for a release

of plaintiffs' obligation on the $12,800 note which defendant held; that Percansky had previously requested that defendant find a purchaser for the business; and that the bill of sale was executed as a means of accomplishing a transfer to a prospective purchaser whom defendant had located.

While the parties were at the tavern on this date, the prospective purchaser, Archie Burris, found by Percansky and defendant, entered the tavern to inspect it. It was at this time that the alleged conversion took place. With reference thereto, Steeves testified that he started to go back of the bar to get some cash out of the register; that as he did this defendant said: "Steeves, wait a minute. * * * we are going to take over the establishment * * * as of today, right now"; that Burris then wedged in and went behind the bar; that Steeves asked Burris about the cash in the cash register, and that Burris stated: "You heard Mr. Levine, we are taking over"; that Steeves asked about his personal papers and was told by Burris that he (Steeves) could take them, and that he did so. Steeves' testimony was corroborated by the bartender and other customers present.

A Minneapolis license for the sale of 3.2 beer attached to the wall of the tavern was then removed by plaintiffs, and the assignment on the reverse side was thereupon signed by both of them, with the space for the assignee's name therein left blank. In their presence, the bartender explained the operation of certain fixtures to Burris. A pinball machine installed in the tavern belonged to Percansky, and the latter explained to Burris the financial agreement covering its operation. In the weeks that followed Percansky returned frequently to service the machine and divided the coins therein with Burris.

A short time thereafter, defendant demanded delivery of the lease and an assignment of the lessees' interest therein from plaintiffs. Plaintiffs refused this demand and instituted unlawful detainer proceedings against Burris, as a result of which plaintiffs recovered possession of the premises on July 30, 1947. Instead of resuming operation of the tavern, however, they locked it, leaving

all merchandise and equipment therein. Subsequently, the fee owner brought unlawful detainer proceedings against them and was awarded possession as of August 14, 1947. Defendant thereupon purchased the building and subsequently sold the business for the sum of $6,000.

The trial court instructed the jury that, as a matter of law, defendant had converted $432.50 worth of merchandise on hand on May 23, 1947, and certain cash in the till, since these items were not included either in the chattel mortgages or the bill of sale. The court further charged that if, as plaintiffs claimed, the bill of sale was delivered as security for the check, which was not to be presented until May 26, defendant's action in taking possession of the personal property prior to that date constituted a conversion thereof; but that, if the bill of sale was absolute and delivered pursuant to an agreement in accord and satisfaction of plaintiffs' note to defendant, the latter's action in taking possession of the property described therein would not constitute conversion of such items.

With respect to defendant's counterclaim, the court charged that if the parties had entered into an agreement in accord and satisfaction which provided for the transfer of the lease to defendant and which was not complied with by plaintiffs, defendant would be entitled to recover the difference between the price he would have received and the price at which he ultimately sold, provided a bona fide sale was lost during the period in which the dispute over the lease was taking place.

At the close of the court's instructions, counsel for defendant stated:

"* * * if it [the jury] should find that a conversion took place it must also find that the obligation to the defendant in the sum of $12,800.00, less approximately $400.00, is still due and unpaid to the defendant * * *."

The court denied this request.

We believe that the evidence is sufficient to sustain the jury's finding that on May 23, 1947, defendant converted the described personal property belonging to plaintiffs. There can be no dispute

on this question insofar as it relates to the merchandise on hand and the cash in the till on that date, since these items were not included either in the bill of sale or the chattel mortgages which secured plaintiffs' note to defendant. With reference to the remaining items in the tavern, the determination of this issue depended upon which version of the transaction the jury chose to believe. There is sufficient evidence to support its finding in plaintiffs' favor. Steeves testified that the check given for the first payment on the note was to be held by defendant until May 26. If the jury chose to believe this, it would follow that until May 26 there could be no default in the payments due on the note and, in the absence of evidence of other forms of default, no right on defendant's part to take possession of the personal property by virtue of the chattel mortgages.

Steeves testified further that the bill of sale was delivered only as security for and until payment of the $500 check on May 26. If this was true, as the jury apparently chose to believe, then defendant had no right to take possession under the bill of sale until subsequent to May 26. It follows that, under plaintiffs' version of the transaction, defendant's action in forcibly taking possession of the personal property on May 23 constituted a conversion, notwithstanding either the chattel mortgages or the bill of sale. Dow-Arneson Co. v. City of St. Paul, 191 Minn. 28, 253 N. W. 6; Merz v. Croxen, 102 Minn. 69, 112 N. W. 890.

It is true that defendant presented much testimony to establish that plaintiffs had voluntarily turned over their personal property to defendant. Had the jury chosen to believe this, its verdict would not have been disturbed here. However, it is not the function of this court to determine the credibility of the witnesses who testified, and, since there is sufficient evidence to support the verdict, it must be sustained.

■ The jury's finding that a conversion took place on May 23 negatived defendant's claim that the bill of sale was absolute and delivered in full settlement of the prior note and chattel mortgages pursuant to an agreement in accord and satisfaction. The

bill of sale being ineffective, the original note in the sum of $12,800, as well as the chattel mortgages securing it, continued in full force and effect. Defendant's counterclaim, however, was not based upon the note and chattel mortgages, but upon damages for the breach of the alleged accord and satisfaction agreement. The note was not in issue either by virtue of the pleadings or the theory under which the action was tried. The note, of course, was admissible in evidence under plaintiffs' theory to show that no default existed therein on May 23, 1947, and under defendant's theory as proof of the consideration for the agreement in accord and satisfaction. Its reception in either connection, however, could not change the basis or theory of defendant's counterclaim and the measure of damages sought thereunder. It would follow that the trial court did not err when it refused to grant defendant's request to instruct the jury that "if it should find that a conversion took place it must also find that the obligation to the defendant in the sum of $12,800.00 [the face amount of the note], less approximately $400.00, is still due and unpaid to the defendant * * *."

It is true that in an action for conversion based upon wrongful taking of mortgaged chattels by the mortgagee the mortgagor's damages may be offset by the amount due on the chattel mortgages. This is so primarily because in litigation of that kind both the conversion and the chattel mortgage indebtedness are placed directly in issue. 1 Dunnell, Dig. & Supp. § 1474, and cases cited. This principle would not appear to be applicable here, where under defendant's theory the original note and chattel mortgages had become ineffective by virtue of the new agreement and where damages were sought because of a breach of the latter.

Nothing in the present litigation would constitute a bar to a subsequent action based upon the note and chattel mortgages, since, as stated, they appear to be still in full force and effect. In any such action, plaintiffs, of course, would be entitled to establish offsets based upon payments made upon the note or upon the value of other property received by defendant thereon as the result of

other actions or transactions between the parties arising therefrom or relative thereto.

Affirmed.