## ILLINOIS LIFE INS. CO. et al. v. SHARP.

No. 25507. Jan. 21, 1936.

Rehearing Denied March 3, 1936.

Massingale, Duff & Manatt, for plaintiffs in error.

Ben A. LaFon, for defendant in error.

RILEY, J. This is an action by defendant in error brought originally against the Illinois Life Insurance Company. Before the trial W. A. Bachman was made a party defendant.

The life insurance company was placed in the hands of a receiver, and Abel Davis and Jack Easton were appointed ancillary receivers and were also made parties defendant.

On January 1, 1931, plaintiff executed a written application to the Illinois Life Insurance Company for a 20-year endowment life insurance policy, with Anna Mae Sharp, her daughter, as beneficiary. The application called for insurance in the sum of $25,000, but it also called for payment at maturity of a monthly income of $125 for 240 months. It appears that the amount of insurance to produce such monthly income was $30,000 instead of $25,000. The application was accepted and a policy was written in the sum of $30,000.

An application for a similar policy, purporting to be executed by Anna Mae Sharp, bearing date of January 27, 1931, with Anna Sharp, her mother, as beneficiary, was presented to the insurance company, and a policy in the sum of $30,000 was issued thereon. The annual premium on the policy of plaintiff was $1,302.38, and that of the daughter was $1,102.63.

Plaintiff paid the first premium on both policies to the agent of plaintiff, and this action is to recover back the money so paid.

Defendant W. A. Bachman was one of the agents of the company.

Plaintiff, as grounds for recovery, alleged in substance that S. A. Scott, representing himself to be an agent of the Illinois Life Insurance Company, solicited plaintiff to take the policy on her own life making her daughter her beneficiary, and solicited the daughter to take a like policy in favor of plaintiff; that the daughter declined to take

such policy, but did agree to take a policy in the sum of $1,000, and for that purpose submitted to and passed a medical examination; that plaintiff was desirous of procuring the insurance for herself in favor of her daughter, and for her daughter in favor of herself, but that plaintiff declined and refused to take the policy for herself unless her daughter would take a like amount in her favor; that said agent then suggested to plaintiff that if she (plaintiff) would make the application and submit to a medical examination, he believed that he could get the company to write a policy for plaintiff and one for Anna Mae for a like amount; and believed that if he would produce the policies they, plaintiff and Scott, could prevail upon Anna Mae to accept her policy. Whereupon plaintiff made the application with the understanding and agreement with the agent that she would not be required to take her policy if her daughter, Anna Mae, refused to accept a policy in said sum. That the company caused to be issued the two policies, but that Anna Mae Sharp declined and refused to accept the policy offered to her; that plaintiff then refused to accept the policy offered to her; that Scott thereafter prevailed upon plaintiff to pay the first premium on both policies, representing to her that he believed that if he could present the policy to the daughter showing the premium paid, he could thereby induce her to accept it; that Scott stated to her that if she would pay said premiums, and if for any reason the daughter, Anna Mae Sharp, then refused the policy, the premiums so paid would be returned to plaintiff; that upon such representations she paid the premiums in the sum of $2,405.01; that said agent also induced plaintiff to sign a receipt showing the acceptance of her policy, which he agreed to return to her in the event that Anna Mae Sharp would not accept her policy. That Anna Mae Sharp never would accept her policy, and, therefore, she was entitled to the return of the money so paid. She further alleged that defendant Bachman, in an effort to induce plaintiff to pay additional premiums or execute her note therefor, also explained and stated to her that the company understood that plaintiff's policy was not to be effective unless Anna Mae Sharp accepted her policy.

The policies were tendered to the company and return of the premiums demanded.

The answer of the Illinois Life Insurance Company is in substance: The policies and applications for same constituted the full and complete contracts between the parties thereto, and that the rights and obligations of the parties are wholly defined and covered there-by; that the policies were in full force and effect for the full term for which the premiums were paid; that the company assumed and carried the risks and contingent liabilities, and that both the assured and the beneficiaries enjoyed the protection under the policies for said time for which they bargained; that the plaintiff by retaining the policies and enjoying the protection and benefits thereof, without any attempt to rescind for nine or ten months, is estopped to deny that said policies were accepted and in force, and is estopped to assert a claim for the return of the premiums which she voluntarily paid; that the agent, Scott, had no power or authority from defendant company to make any agreement, oral or otherwise, modifying or affecting the provisions, conditions, or operation of said policies or either of them, and that if he did so, it was without the knowledge or consent of said defendant, and such agreement, if made, was in no way binding upon defendant company, and in no way affected the rights and obligations of either of the parties to said policies.

The answer of defendant Bachman was by general denial, and in substance that he at all times in connection with said policies acted as agent for the company and fully disclosed his agency; that he at no time acted or assumed to act in excess of his authority; that plaintiff ratified all acts between plaintiff and said agent.

Plaintiff's reply was a general denial.

The cause was tried to a jury, resulting in a verdict and judgment in favor of plaintiff and against all the defendants for the full amount claimed, and defendants appeal.

There are eleven assignments of error, but they are all presented under two propositions.

First it is urged that a soliciting agent for life insurance has no power to make an oral contract of insurance, nor to make an oral agreement varying the terms of a written contract of insurance, nor waiving any matter of the contract, without specific authority from the superior officers of his company.

The rule stated seems to be fairly well settled and has been followed in this state. Phipps v. Union Mut. Ins. Co., 50 Okla. 135, 150 P. 1083; Etenburn, Adm'r, v. Met. L. Ins. Co., 118 Okla. 55, 246 P. 388; Shaffer et al. v. Ocean Acc. & Guarantee Corp, 153 Okla. 135, 5 P. (2d) 363.

The evidence is in substance that sometime in the latter part of 1930, the husband of plaintiff died leaving a considerable estate to his widow, the plaintiff herein, and her daughter, Anna Mae Sharp. Shortly there-

after, S. A. Scott, the agent of the Illinois Life Insurance Company, appeared upon the scene. His business was soliciting life insurance (from lately bereaved widows of more than usual means). The widow lived at Orlando. J. E. Schaefer, a banker, living in Orlando, was a local agent for the company. He recommended Mrs. Sharp to Scott as a "good prospect." Scott went to see her and "suggested" the insurance to her, and proposed the two policies, one on the life of plaintiff with the daughter as beneficiary, and the other on the life of the daughter with plaintiff as beneficiary, each policy to be sufficient in amount that when paid out at the end of 20 years, would provide the beneficiary with a monthly income of $125 per month for 240 months, or could be converted to cash in one payment of about $22,000. Plaintiff became interested and agreed to take such a policy provided the daughter, Anna Mae, could be induced to take a like policy. At that time the daughter was away from home, being in Kansas City. Plaintiff signed the application and submitted to a medical examination, all with the understanding with the agent that it was not to become effective unless Anna Mae Sharp could be induced to take a like policy. Her application was sent into the company, through the general agent at Wichita, who, before sending it in to the company, dated it back to December 31, 1930, so as to get credit for the business in that year.

In the latter part of January, 1931, the daughter, Anna Mae, returned home and the proposition was put up to her. She declined and refused to take such a policy. Thereupon Scott proposed to her to take a smaller policy and of a different kind. She agreed to take a policy in the sum of $1,000, and signed an application therefor, and submitted to a medical examination. This application was sent to the company and was accepted by it, and a policy issued and delivered to Anna Mae Sharp in the sum of $1,000, which she accepted.

Scott was a witness for plaintiff and testified in part:

"Q. When Anna Mae Sharp returned, did you discuss insurance with her? A. Yes, sir. Q. Did you ask her to sign an application? A. Yes, sir. Q. In what amount? A. Originally, $1,000 policy. Q. I thought you told the jury you were trying to sell her a larger policy? A. I was, but she was a little skeptical on insurance at that time and I wanted to get her examined and get this small amount first, and I ordered out a larger policy at the same time. Q. On the strength of an application for a $1,000 policy you ordered out a larger policy. A. Yes, sir. Q. I hand you here plaintiff's exhibit 'B' and ask you if you know what that is? A. Yes, that is an insurance policy. Q. Can you tell the jury what insurance policy it is? A. Illinois Life Insurance policy written for Anna Mae Sharp in the amount of $30,000. Q. Is that the policy that—the larger policy you ordered out on the strength of the $1,000 application? A. Yes, sir. Q. You will notice that the policy is dated December 31, 1930, this application is dated December 31, 1930, and the medical examination was made the 27th of January, 1931. I will ask you if your company issues policies before the medical examination? A. No, sir. Q. Where is the home office in this company? A. Chicago, Ill. Q. Do they pass on applications? A. Yes, sir. Q. When you took this application, can you tell the jury when you took it with reference to the date of the medical examination? A. I took the application a day or two before they were examined, before the medical examination was made. I can't remember exactly, it was the latter part of January. Q. What did you do with the applications? A. Sent them to the Wichita agency. Q. And they in turn sent it to Chicago. A. Yes, sir. Q. How long do you think it would take for that application to get to Chicago after it was mailed in. after you sent them? A. Three days. It has to go to Wichita and lose a day there, and then on to Chicago. It takes about three days to get to the home office. Q. Then they dated the policy the 31st day of December, 1930, or something like a month earlier than it was written. and came to their attention. A. Yes, sir."

When the policies were issued by the company they were sent to the office of the defendant Bachman in Wichita, Kan.

The estate of plaintiff's deceased husband had not been settled, and when her policy arrived Scott suggested to Mrs. Sharp that if she would pay the premium he believed he could induce Anna Mae to accept her policy by representing to her that the premium had been paid.

On January 20, 1931, she gave Scott her check for $1,022.67, which was marked paid 1-23-31.

On February 18, 1931, plaintiff executed her promissory note to Scott in the sum of $1,379.05, payable April 1, 1931.

The note was later taken up by check in the sum of $900, and another payment of $479.05, this was on April 3d or 6th.

About April 14th, some further payments were made, making in all $2,405.01.

In the meantime efforts were being made to induce Anna Mae Sharp to accept the $30,000 policy, but she finally declined.

It appears that some question arose between the three agents as to how the commissions were to be divided. Forty per cent., or about $960, was sent to the company as its part of the first premium on the two policies. Schaefer claimed a part, and was finally paid $360.

The record is not entirely clear as to who received the balance, but Bachman testified that of the first premium the company should receive 40 per cent. and the soliciting agent 60 per cent.

The part of the contract as to the power of the soliciting agent is contained in the application, and made a part of the policy, and reads:

"2nd. That this application, of which this agreement forms a part, shall with any policy (whether of the kind applied for or otherwise) issued hereunder, and the benefits and conditions therein, constitute the contract between me and the company, and shall be binding on all parties in interest under such policy.

"3rd. That inasmuch as only the officers at the head office of the company in the city of Chicago have authority to determine the terms and conditions upon which a policy shall issue on any application, no statements, promises or information made or given by, or to the person soliciting or taking this application for a policy, or by or to any other person, shall be binding on the company, or in any manner affect its rights, unless such statements, promises or information be reduced to writing, and presented to the officers of the company, at the head office, in this application."

The clause immediately fol'owing the above reads:

"That the company shall incur no liability under this application or any policy issued hereon until the first premium has actually been paid to, and accepted by the company or its authorized agent, and this application has been received, approved, the policy issued thereon by the company at the head office, and said policy actually delivered to and accepted by me, all during my lifetime and sound health."

Defendants contend that inasmuch as the soliciting agent, Scott, had no power to make an oral contract with plaintiff. nor to modify the terms of the application attached to the policies, and when plaintiff received the same she knew and was held in law to know that all the oral negotiations were merged in the contracts, composed of the applications and policies, and that Scott had no power to make the agreement as to the conditional delivery of the policies, and that the company had no knowledge thereof, and therefore did not and could not ratify the alleged agreement.

The identical questions were presented in Harnickell v. N. Y. Life Ins. Co. (N. Y.) 18 N. E. 632, 2 L. R. A. 150, except that in that case the conditional agreement was in writing and here it was oral. Therein it is held:

"The receipt of insurance policies, under a written agreement that they shall be returned if policies held by the insured in other companies should not be surrendered on terms satisfactory to him, is an acceptance of the policies only upon a condition precedent, and no valid contract is thereby created until the condition is complied with. Whether the agent of the company had power to make such a conditional delivery or not is immaterial, as if he had not, the result would still be that no contract was made."

Mr. Justice Peckham, afterwards Justice of the Supreme Court of the United States, in discussing the effect of the provisions of the policy similar to those above quoted, said:

"The provisions contained in the policies which are above quoted, relate to the policies themselves after they should become executed instruments between the parties. All negotiations had before such event, and all parol agreements between the assured and the agent of the defendant, would have been merged in the contract evidenced by the policies themselves, had the negotiations been carried out as intended, and such policies been absolutely delivered to and accepted by the plaintiff; hence, any oral representation or statement made by the agent of the company, and not contained in the contract of insurance. would have formed no part thereof, and could not have been insisted upon by the plaintiff as against the defendant company."

And:

"We think, with the learned court below, that it is wholly unimportant whether Hamlin had any power from the company to make a conditional delivery or not. The plaintiff had power to attach such conditions as he chose to the acceptance of the policies; and, if the agent of the company had no power to make conditional delivery to the plaintiff, the result would still be that no contract was ever made, and no absolute acceptance ever had. It cannot be argued for one moment that an absolute delivery of a paper is made to an individual who has power to and does refuse to accept it, except upon condition, because the person who assumed to make the delivery was an agent, who had no authority from his principal to make a conditional delivery."

A similar question was presented in Hartford Fire Ins. Co. v. Wilson (U. S.) 47 L. Ed.

261. Therein the Harnickell Case was quoted from with approval. It was there held that because conditions upon which the policies of insurance were deposited with the agent of insured had failed there was no subsisting contract of indemnity between the company and insured. In the body of the opinion it is said:

"The argument is that because the policies contained various stipulations restricting the power of the agent, it is incompetent to prove that the contract never came into operative force by a final unconditional delivery. But these stipulations apply only to a contract which has become executed and do not apply where the contract had not been completed by an absolute delivery of the instrument."

The uncontradicted evidence is that plaintiff accepted the policies only on condition that her daughter could be induced to accept her policy, and that condition was never fulfilled. The contracts never were completed by an absolute delivery and acceptance by the insured.

It is also contended that because plaintiff kept the policies for an unreasonable length of time before returning them, she is estopped to claim the return of the money paid.

The question of whether or not the policies were returned within a reasonable time was submitted to the jury and by the verdict the jury found that she did.

The judgment is affirmed.

McNEILL, C. J., OSBORN, V. C. J., and BUSBY and PHELPS, JJ., concur.