GEORGIA–PACIFIC CORPORATION,
Appellee,

v.

LUMBER PRODUCTS COMPANY,
Appellee,

and

Admiral State Bank, Appellant,

and

Bond Lumber Company, Appellant.

No. 49553.

Supreme Court of Oklahoma.

Feb. 6, 1979.

Charles S. Holmes and Steven M. Harris, Tulsa, for appellee, Georgia-Pacific Corp.

Robert F. Biolchini, Doerner, Saunders, Daniel & Langenkamp, Tulsa, for appellee, Lumber Products Co.

D. E. Hammer, Boesche, McDermott & Eskridge, Tulsa, for appellant, Admiral State Bank.

James C. Lang, Brian S. Gaskill, Sneed, Lang, Trotter, Adams, Hamilton & Downie, Tulsa, for appellant, Bond Lumber Co.

LAVENDER, Chief Justice:

Appellee, Georgia-Pacific Corporation (Georgia-Pacific), initiated an action in the District Court seeking to recover a money judgment against Lumber Products Company, a corporation, asking that the corporation be placed in receivership and a receiver be appointed. The trial court ordered the corporation placed in receivership, receiver was appointed, and that receiver directed to give notice to secured creditors to file and prove their respective claims.

Pursuant to that order, three secured creditors, Admiral State Bank (Bank), Georgia-Pacific, and Bond Lumber Company (Bond) each duly filed their respective claims. On March 8, 1976, the District Court entered its order establishing the validity of and priority of the secured claims. That order was amended by order nunc pro tunc entered on the 19th day of March, of the same year. The order totally denied Bond's claim, and denied most of Bank's claim, holding that the appellee, Georgia-Pacific, had a prior perfected security interest in the same collateral. Appellants, the Bank and Bond, appeal from that order.

For some time, both the Bank and Bond did business with James L. Baker, d/b/a Lumber Products Company, and had extended credit to Baker, taking a security

interest in various assets of Baker's inventory, accounts receivable, and proceeds thereof. Prior to the time of the transactions involved in this litigation, Baker formed a corporate entity, Lumber Products Company, but that corporate entity remained inactive, and Baker conducted his business as James L. Baker d/b/a Lumber Products Company, a sole proprietorship. In 1976, purportedly on May 1, Baker d/b/a Lumber Products Company transferred all of his business's assets in bulk to the corporate entity, Lumber Products Company. In exchange for the assets, the corporate entity agreed to assume all debts and liabilities of the sole proprietorship, and issued some of its stock to Baker.

Georgia-Pacific's claims all grew out of transactions with the corporate entity, whereas the other secured creditors' claims were based or partially based on transactions with the sole proprietorship. All three of the secured creditors contend they have perfected security interests in assets of the corporate entity, now in receivership. Not all the underlying security agreements and notes were executed by the corporate entity, as some were executed and entered into by James L. Baker, d/b/a Lumber Products Company, the sole proprietorship.

All three of the secured creditors perfected their security interest by filing. Bond perfected by filing November 26, 1973, and claims a security interest in the accounts receivable and inventory. Bank perfected by filing at 10:08 A.M., July 28, 1975, and claims a security interest in accounts receivable. Georgia-Pacific perfected by filing at 3:41 P.M., July 28, 1975, and claims a security interest in all accounts receivable, all inventory and various other collateral. As all three of the creditors perfected by filing and as no *special* provisions of the Uniform Commercial Code are applicable in the case before us, the priorities between the three conflicting security interests are governed by the provisions of 12A O.S.1971, § 9–312(5) which provide:

"(5) In all cases not governed by other rules stated in this section (including cases of purchase money security interests which do not qualify for the special priorities set forth in subsections (3) and (4) of this section), *priority between conflicting security interests in the same collateral shall be determined as follows:*

*(a) in the order of filing, if both are perfected by filing, regardless of which security interest attached first under Section 9–204(1) and whether it attached before or after filing;* \* \* \*"
(Emphasis added.)

As to the Bank, the trial court's order here appealed limited the priority of its perfected security interests over the perfected security interests of Georgia-Pacific to the accounts receivable identified by the filed financing statements, and to those security agreements executed by the corporate entity, Lumber Products Company. The trial court refused the Bank's claim against the corporation as to those transactions, including executed security agreements, as between the Bank and Baker d/b/a Lumber Products Company, the sole proprietorship.

We have difficulty with the trial court's refusal to consider the Bank's prior security interest by filing of any assigned accounts receivable from the sole proprietorship to the corporate entity. The corporate entity took any assets so assigned subject to any perfected security interest of the Bank in those assigned assets. 12A O.S.1971, § 9–311.[1] The Bank's perfected security interests would include those secured from both the sole proprietorship and the corporate entity. Its perfected security interest by filing is prior to the perfected security interests by filing of Georgia-Pacif-

---

1. 12A O.S.1971, § 9–311 provides:

"The debtor's rights in collateral may be voluntarily or involuntarily transferred (by way of sale, creation of a security interest, attachment, levy, garnishment or other judicial process) notwithstanding a provision in the security agreement prohibiting any transfer or making the transfer constitute a default, but the *interest so transferred is subject to the creditor's security interest if it is properly perfected*, and nothing stated herein shall be construed to be inconsistent with 21 O.S., § 1834." (Emphasis added.)

ic. 12A O.S.1971, § 9–312(5). That portion of the trial court's order is reversed.

On the limitation of Bank's perfected security interest to specified accounts receivable, the issue becomes as to whether the security interests were in *all* accounts receivable, or in specific accounts receivable which had been assigned to the Bank. With each note and security agreement given the Bank, there was also given *an assignment of specifically listed accounts receivable to the Bank.* Each note indicated there was assigned specific listed accounts receivable as collateral. The security agreements recited that a security interest was taken, in, among other things, "all of borrower's existing accounts receivable and all of borrower's accounts receivable which come into existence during the terms of this agreement, * * * [and] all of the proceeds of said * * * accounts receivable." However, the financing statements, filed by the Bank, stated:

"This financing statement covers the following type (or items) of property. *Assignment accounts receivable.*" (Emphasis added.)

12A O.S.1971, § 9–402(1) provides that for a financing statement to be sufficient, it must contain: " * * * a statement indicating the types, or describing the items, of collateral."

12A O.S.1971, § 9–110 deals with the sufficiency of a description of collateral and provides:

"For the purposes of this Article any description of personal property or real estate is sufficient whether or not it is specific if it *reasonably identifies what is described.*" (Emphasis added.)

In the case before us, although the clear language of the security agreement indicated a security interest was taken in all accounts receivable, the *financing statement did not.* Rather, the financing statement indicated that a security interest was taken in an assignment, describing the collateral as "assignment of accounts receivable."

■ We hold that such a description does not reasonably identify the collateral as *all* accounts receivable. Accordingly, we construe the language to create a security interest in a particular assignment of accounts receivable only, and not in all accounts receivable. Bank's perfected prior security interest is limited to an interest in the accounts receivable which were assigned to the Bank. That part of the trial court's order is affirmed.

As to Bond, the trial court's order here appealed found (1) Bond's agreements with the sole proprietorship had no effect on the corporate entity in this receivership proceeding; (2) these agreements did not create a security interest but were assignments; and (3) Bond failed in proving any identifiable goods or accounts surviving the assignment by the sole proprietorship to the corporate entity.

As said in this opinion in discussing the Bank's priority, there is difficulty with the trial court's holding of no effect on alignment of priorities in this receivership proceedings through the transactions of Bond with the sole proprietorship. The corporate entity took any assets assigned to it by the sole proprietorship subject to any perfected security interest of Bond in those assigned assets. 12A O.S.1971, § 9–311. Bond's perfected security interest by filing is prior to the perfected security interest of filing of Georgia-Pacific. 12A O.S.1971, § 9–315(5). That portion of the trial court's order is reversed.

■ Article 9, Secured Transaction of the Uniform Commercial Code by policy establishes intent over form in determining if a transaction creates a security interest. § 9–102. The Article applies to security interest created by contract including assignment. § 9–102(2). The agreement relied upon by Bond entered into with the sole proprietorship recites its purpose "of securing payment." There is other language such as "the security interest hereby created," "assignor desires to secure the payment," "be applied immediately upon the obligations secured hereby," and "all aspects of the security agreement shall be

controlling as to the secured inventory." The contract was entitled "SECURITY AGREEMENT – ACCOUNTS – INVEN-TORY." It was attached to and filed with financing statement as provided for by the UCC. Although containing words of assignment, the intent is clear to create a security interest as a secured transaction. § 9–102(2). That part of the trial court's order, finding an assignment only and no security interest created, is reversed. Similar to the Bank, the accounts receivable are expressly described with the security interest limited to the accounts so listed. We make no determination as to their existence when the receivership occurred, and remand to the trial court for that determination.

Bond's perfected security interest by filing included inventory of the sole proprietorship. Bond argues a secured interest in inventory carries with it the automatic construction that extends the term of "inventory" to include "after acquired inventory." He calls such a construction to be commercially reasonable and in contemplation of the parties that the nature of the inventory is to be sold and replaced. *In re Nickerson and Nickerson, Inc.,* 329 F.Supp. 93 (D.Neb. 1971); *In re Fibre Glass Boat Corporation,* 324 F.Supp. 1054 (S.D.Fla.1971); and *Owen v. McKesson and Robbins Drug Company,* 349 F.Supp. 1327 (N.D.Fla.1972) are cited to support this understanding. In its brief, Georgia-Pacific agrees, but contends this cannot be extended to the inventory of the corporate entity.

■ With the existing inventory of the sole proprietorship being subject to a perfected security interest of Bond's, at the time of the assignment of that inventory by the sole proprietorship to the corporate entity, then that inventory was taken subject to Bond's security interest. 12A O.S.1971, § 9–311. The changing nature of the inventory through sale and replacement in the ordinary course of business of another enti-

ty now owning the inventory, but taking the inventory subject to a perfected security interest, should not destroy that perfected security interest. To hold otherwise creates a device whereby the effectiveness of § 9–311 as to a security interest in inventory, as it is sold in the ordinary course of business and replaced, is destroyed. With this understanding of Bond's security interest acting on the inventory of the corporate entity at the time of the receivership, that portion of the trial court's order concerning Bond's failure to identify goods, as relating to inventory, is reversed and that matter remanded for a determination by the trial court.

This court ordered parties to brief the applicability of the Uniform Fraudulent Conveyance Act, 24 O.S.1971, § 101 et seq.[2] If applicable, the Act could affect the assignment of assets by Baker, d/b/a Lumber Products Company to Lumber Products Company, a corporation; the security interest of Bond stemming from execution of security agreement by Baker as a sole proprietorship; and certain security interest of the Bank stemming from execution of security agreement by Bond as a sole proprietor. However, we make no application of the Act.

■ For a conveyance to be fraudulent under the Act, there must be actual intent to hinder, delay, or defraud creditors (§ 105), or the grantor be insolvent or be thereby rendered insolvent by the conveyance and made without a fair consideration (§ 104).

■ Actual intent, as distinguished from intent presumed in law,[3] to hinder, delay or defraud creditors is an essential element of § 105. Motivation comes into play.[4] Here, Baker testified, but his motivation in assigning assets of the sole proprietor to the corporate entity in exchange for stock and assumption of debts was not shown. Nor

---

2. The Uniform Fraudulent Conveyance Act, 24 O.S.1971, § 101 et seq. is referred to in this portion of the opinion as "the Act."

3. *State v. Nashville Trust Co.,* 28 Tenn.App. 388, 190 S.W.2d 785, 796 (1945).

4. *Matthews v. Schusheim,* 36 Misc.2d 918, 235 N.Y.S.2d 973, 976 (1962).

did the trial court in the order here appealed make a finding or determination of actual intent by Baker to defraud. Section 105 is not applicable and not controlling in this appeal.

A person is insolvent when the present fair saleable value of *his assets* is less than the amount that will be required to pay *his* probable liability on *his* existing debts as they become absolute and matured. § 102(1). "Assets" of a debtor means property not exempt from liability for *his* debts. To the extent that any property is liable for any debts of the debtor, such property shall be included in *his assets.* § 101. Though § 104 now requires insolvency and lack of a fair consideration, this court placed the burden of proof as both issues on the creditor in *Carraco Oil Company v. Roberts,* Okl., 397 P.2d 126 (1964). There, the similar statute concerned was 24 O.S.1961, § 10.[5] But, we find no rationale requiring a different burden of proof under the Act.

▇▇ In present case, there is evidence of the insolvency of the business operated by Baker as a sole proprietor. No effort was made to establish the insolvency of Baker, the person. Baker's right to do business under the assumed name of Lumber Products Company has long been recognized. *Robinovitz v. Hamill,* 44 Okl. 437, 144 P. 1024 (1914). That is without abandoning his real name. One may sue in any name in which he may contract, as well as in any name by which he is generally known. *Robinovitz, supra.*

We do not splinter the legal entity of the individual as between a person and the business operated by him as a sole proprietor. There was no showing that Baker's assets, or property not exempt from liability for his debts, were of an amount to make Baker, the person, insolvent. Creditors Bond and the Bank, failed in their burden of proof to establish the insolvency of the

grantor or assignor, Baker. Section 104 is not applicable.

The Bank objects to the payment of the attorney for the receiver out of the accounts receivable. Regarding this issue, the Bank argues:

"Such costs, which are properly taxed, should be paid out of proceeds of inventory, equipment and other assets, the proceeds of which are in excess of the costs and fees and which have been paid to Georgia-Pacific Corporation. The taxing of such costs admittedly rests in the sound discretion of the Court, but if the proceeds of accounts receivable are to be paid to creditors other than Georgia-Pacific Corporation, then it appears an abuse of discretion for such fees to be paid out of those funds. As an alternative, it is suggested that the trial court on remand should be instructed to determine the portion of time spent in collecting and liquidating assets awarded to Georgia-Pacific Corporation and time and effort expended in collecting and preserving proceeds of receivables and an equitable pro rata determination made of how such fees and expenses should be shared."

▇▇ The Bank cites no authority for its proposition that the trial court had abused its discretion, and, as we have held in the past,[6] this Court indulges in the presumption that the trial court's decision is correct, and decisions will not be reversed on argument of error not supported by authority, if authority is available, unless error is apparent without further research. In the case before us, the error is not apparent without further research, accordingly, we presume the trial court has not abused its discretion.

The trial court's order here appealed is affirmed in part, reversed in part, and the cause remanded with instructions that the trial court make application of the views expressed in this opinion.

---

5. 24 O.S.1961 (now 1971), § 10 reads:

"Every conveyance of real estate or any interest therein, and every mortgage or other instrument in any way affecting the same, made without a fair and valuable consideration, or made in bad faith, or for the purpose of

hindering, delaying or defrauding creditors, shall be void as against all persons to whom the maker is at the time indebted or under any legal liability."

6. See e. g., *Mattes v. Baird,* 176 Okl. 282, 55 P.2d 48 (1936).

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

IRWIN, V. C. J., and WILLIAMS, HODGES, SIMMS, DOOLIN, HARGRAVE and OPALA, JJ., concur.

BARNES, J., dissents.