**THORP COMMERCIAL CORPORATION, Plaintiff,**

v.

**NORTHGATE INDUSTRIES, INC., Wayne M. Benson, Roy E. Benson, Gerald Benson, Marsha Benson, Paul Gallick, Franklin National Bank of Minneapolis, Jensen Contractors, Inc. and David DeZiel, Defendants.**

Civ. No. 4–74–58.

United States District Court, D. Minnesota, Fourth Division.

May 7, 1980.

---

Edward J. Heiser, Jr. and Michael T. Hart, Whyte & Hirshboeck, S.C., Milwaukee, Wis., and J. Michael Dady, Lindquist & Vennum, Minneapolis, Minn., for plaintiff.

Robert G. Share and James E. Nelson, Levitt, Palmer, Bowen, Rotman & Share, Minneapolis, Minn., for defendant Franklin Nat. Bank of Minneapolis.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This action was commenced in 1974 by plaintiff Thorp Commercial Corporation (hereinafter Thorp) against various defendants, alleging violations of the federal securities laws and common law fraud. The securities act claims were dismissed in 1974, and Thorp's common law fraud claim remains to be tried. This commercial dispute arises from the business failure of Northgate Industries, Inc. (Northgate), which was formerly known as Jensen Contractors, Inc. (Jensen) and Mart-Son, Inc. (Mart-Son) (hereinafter collectively referred to as the debtor).

Defendant Franklin National Bank of Minneapolis (hereinafter Franklin) filed a counterclaim against Thorp, and alleged that the receipt of money by Thorp from the debtor in repayment of loans made by Thorp to the debtor amounted to conversion under Minnesota law because, according to Franklin it possessed a prior perfected security interest in the proceeds of the debtor's accounts. The immediate dispute before the Court involves cross motions by Thorp and Franklin for summary judgment on Franklin's counterclaim. The Court has determined, for the reasons that follow, that Thorp is not liable for conversion as a matter of law, and that Thorp is therefore entitled to summary judgment.

The parties have stipulated to the facts in this matter. During 1971 and thereafter, Mart-Son was engaged in the business of repairing structures damaged by fire or other casualty. The bulk of its revenue came from casualty insurance companies, who would retain Mart-Son on behalf of their insureds. Effective December 31, 1972, Mart-Son merged with Jensen Contractors, Inc., Jensen being the survivor corporation.[1] On April 11, 1973, Jensen changed its name to Northgate Industries, Inc. (Northgate).

On May 13, 1971, Franklin loaned Mart-Son $6,500.00, and took a security interest under a security agreement signed by the debtor in all documents of title, all accounts, all contract rights, and all proceeds. Mart-Son executed a promissory note evidencing this $6,500.00 debt. The security agreement reflects that the security was taken to secure payment of all indebtedness "now existing or hereafter at any time created  . . . ." The note signed by Mart-Son reflects that the security agreement secured future indebtedness as well. On May 21, 1971, Franklin filed a financing statement with the Minnesota Secretary of State, which curiously described the collateral as "Assignment Accounts Receivable" and "Proceeds." While the note and security agreement provided that the collateral described would secure future indebtedness and would cover after acquired property, the description of the collateral in the financing statement did not expressly provide that the collateral encompassed accounts receivable or assignments which would arise in the future. Franklin contends that this May 21, 1971 filing gives it priority over Thorp to the proceeds of the debtor's accounts. On July 21, 1971, Mart-Son executed another note to Franklin in the sum of $8,682.24. By May 4, 1972, Mart-Son had paid the two promissory notes to Franklin in full.

On April 3, 1972, Mart-Son executed and delivered to Thorp a "Receivables Revolving Loan and Security Agreement," which described the collateral as all of Mart-Son's "accounts and contract rights, and personal property received as returns or repossessions, whether now owned or hereafter acquired, and all proceeds of any of them, including all deposits in the Cash Collateral Accounts." Thorp filed a financing statement two days later, and described the collateral exactly as above. Thereafter, until

---

1. The certificate of merger provided that all rights of creditors would be unimpaired by the merger and that title to Mart-Son's property would vest in Jensen. Based on the merger agreement, Thorp argues that its rights as a creditor would somehow be impaired if Frank-

lin is allowed to satisfy its claim based on a note executed by Jensen out of the assets of Mart-Son. In light of the decision reached by the Court, it is unnecessary to resolve this argument.

September 13, 1973, Thorp made periodic advances to Mart-Son, and pursuant to their agreement, Mart-Son would make payment to Thorp by endorsing checks it received from insurance companies and forwarding them to Thorp. On less frequent occasions, Mart-Son would issue checks drawn upon Mart-Son's own checking accounts in order to pay Thorp. From the time it began making advances to Mart-Son until the latter part of 1973, Thorp collected more than $685,000.00 from Mart-Son and its successors as repayment for advances made by Thorp.

On July 13, 1972, Franklin made another advance, took a promissory note from Mart-Son in the amount of $10,000.00, and took a security interest in documents of title, accounts, contract rights, and proceeds. On July 20, 1972, Franklin filed another financing statement, which described the collateral as "Assignment A/C Rec," and proceeds. On August 16, 1972, Mart-Son paid the $10,000.00 note in full.

On August 25, 1972, Franklin advanced $15,000 to Mart-Son and took a promissory note in that amount. Apparently no financing statement was filed by Franklin. On five subsequent occasions, Franklin advanced an additional $15,000, $18,000, $5,000, $20,000 and $5,477.72, taking promissory notes from Mart-Son, Jensen and Northgate. After the merger and after taking a number of notes from Jensen, Franklin filed a financing statement on February 5, 1973, and described the collateral as: "[a]ll machinery and equipment . . . now owned or hereafter acquired. All accounts receivable now or hereinafter acquired." The debtor apparently made no payments to Franklin until October 17,

1973. Thorp contends that the subsequent notes paid the prior notes while Franklin submits that the subsequent notes executed by Mart-Son merely renewed the prior notes. Mart-Son's failure to pay on the notes resulted in Northgate and Mart-Son executing two notes to Franklin on November 19, 1973, one in the amount of $30,579.76, and one in the amount of $30,000.00. These notes remain unpaid.

The stipulation of facts executed by the parties and some affidavits in this matter indicate that at some point in time prior to the commencement of this suit, both Thorp and Franklin became aware of the other's role in the financing of the debtor, at least in a general sense. In this regard, it should be noted that the president of Franklin during this time frame joined the Board of Directors of Mart-Son prior to the merger. It is unclear from the record whether, and if so when, Thorp acquired knowledge of Franklin's security interest or any claim on Franklin's part that it was entitled to priority with respect to the proceeds of the debtor's accounts.

Franklin's basic position in this litigation is that Thorp is liable for conversion because Thorp converted the proceeds of accounts receivable in which Franklin had a prior perfected security interest. Franklin argues that its first in time filing on May 21, 1971, is sufficient to give it priority over Thorp for any advances which Franklin made after that date.

Thorp has asserted a number of defenses.[2] Its basic position, however, is that Franklin does not have priority over Thorp's security interest. Because the

---

**2.** Thorp argues that Franklin does not have priority over its security interest. In this regard, Thorp contends that Franklin's financing statement fails to adequately describe the collateral. In a related argument, Thorp contends that because any funds received by Thorp were received prior to the time the final notes to Franklin were executed, and as there was no attachment of Franklin's security interest prior to the time funds were received by Thorp, no conversion occurred. Further, Thorp argues that because it has a security interest in "contract rights" which come into existence before

accounts, it has priority over Franklin. Thorp also argues that Franklin in effect waived its right to the proceeds of the accounts receivable because it "authorized" the debtor to dispose of the collateral, either in the security agreement itself or by a course of dealing. Further, Thorp contends that its status as a holder in due course is a sufficient defense to a conversion claim. Finally, Thorp argues that the merger between Mart-Son and Jensen precludes liability for conversion on one of the unpaid notes.

Court has concluded that Franklin's security interest is not entitled to priority over Thorp's, it is unnecessary to resolve or discuss all the arguments raised by Franklin and Thorp.

Under Minnesota law, conversion has been defined as an act of wilful interference with the personal property of another which is without justification or inconsistent with the rights of the person entitled to the use, possession or ownership of the personal property. *Larson v. Archer-Daniels-Midland Co.*, 226 Minn. 315, 32 N.W.2d 649 (1948); *Dow-Arneson Co. v. City of St. Paul*, 191 Minn. 28, 253 N.W. 6 (1934). Moreover, the "[i]nnocent misapplication or deprivation of funds owned by others is in the law no less a conversion because such was done innocently or in ignorance." *Hauser v. Farwell, Ozmun, Kirk & Co.*, 299 F.Supp. 387, 395 (D.Minn.1969). Thus, the question of whether a conversion took place by virtue of Thorp's receipt and retention of money from the debtor is dependent on which lender has priority under Article 9 of the Uniform Commercial Code, Minn.Stat. § 336.9–101 *et seq.* If Franklin does not have priority to the proceeds of the debtor's accounts, it cannot be said that Thorp's retention of proceeds is inconsistent with any rights possessed by Franklin.

Article 9 of the UCC has established a system of notice filing whereby secured parties may file financing statements which describe the collateral so as to warn third parties or put them on notice that another secured party has an interest in certain collateral. *James Talcott, Inc. v. Franklin National Bank of Minneapolis*, 292 Minn. 277, 194 N.W.2d 775, 782 n.3 (1972). Minn. Stat. § 336.9–402(1) provides in part that:

A financing statement is sufficient if it gives the name of the debtor and the secured party, is signed by the debtor, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types or describing the items, of collateral.

Minn.Stat. § 336.9–110 deals with the sufficiency of a description of collateral, and it provides:

For the purposes of this article any description of personal property . . . is sufficient whether or not it is specific if it reasonably identifies what is described.

The official comment to this provision notes in part that:

The test of sufficiency of a description laid down by this Section is that the description do the job assigned to it—that it make possible the identification of the thing described.

The second purpose of the financing statement is that it limits the extent of the filing party's perfection, and therefore priority, to the collateral which has been reasonably identified in the financing statement itself. *James Talcott, Inc. v. Franklin National Bank of Minneapolis*, 292 Minn. 277, 194 N.W.2d 775, 782 n. 3 (1972). Thus, a secured party can perfect a security interest only in collateral which has been adequately described in the financing statement. *In re Katz*, 563 F.2d 766 (5th Cir. 1977).

While its security agreement with Mart-Son covered various forms of collateral, the initial financing statement filed by Franklin on May 21, 1971 described the collateral only as "Assignment Accounts Receivable" and "Proceeds." The security agreement between Mart-Son and Franklin does not refer to any specific accounts receivable assigned to Franklin, nor does the agreement refer to any assignment[s]. In order to find Thorp liable for conversion, Franklin must have priority under the Code to accounts [3] which came into existence after

---

**3.** The phrase "accounts receivable," in itself, reasonably identifies the collateral as accounts, which was defined prior to 1971 in Minn.Stat. § 336.9–106 (1971) as follows:

any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper. Minn.Stat. § 336.9–106 (1971). This provision was amended in the Minnesota 1976 amendments to add the following language: "whether

it filed its financing statement. Thorp has argued that the description used by Franklin fails to reasonably identify the collateral as all present and future accounts of the debtor, and therefore Thorp cannot be liable for conversion. The threshold issue which confronts the Court is whether the description of the collateral as "Assignment Accounts Receivable" in a financing statement is sufficient under Minn.Stat. § 336.9–110 to perfect a security interest in all present and future accounts of the debtor.

In *Georgia-Pacific Corp. v. Lumber Products Co.*, 590 P.2d 661 (Okl.1979), the Oklahoma Supreme Court was confronted with interpreting an identical description, and an analogous situation. *Georgia-Pacific* concerned a dispute over the priority to a debtor's assets between three secured parties, in which the Admiral State Bank had taken a security interest in all of the debtor's present and future accounts receivable, plus proceeds. In the note and security agreement between the debtor and the bank, an assignment of specifically listed accounts receivable was given to the bank. While the security agreement recited that the collateral encompassed all of the borrower's accounts receivable, the financing statement filed by the bank only identified the collateral as "Assignment Accounts Receivable." The Oklahoma Supreme Court limited the extent of the bank's perfection (and thus priority) to only those accounts which were specifically assigned to it by the debtor in the security agreement. The court explained:

> In the case before us, although the clear language of the security agreement indicated a security interest was taken in all accounts receivable, the *financing statement did not*. Rather, the financing statement indicated that a security interest was taken in an assignment, describing the collateral as "assignment of accounts receivable."

We hold that such a description does *not reasonably identify the collateral as all* accounts receivable. Accordingly, we construe the language to create a security interest in a particular assignment of accounts receivable only, and not in all accounts receivable. Bank's perfected prior security interest is limited to an interest in the accounts receivable which were assigned to the Bank. That part of the trial court's order is affirmed.

*Id.* at 664.

■ The Court has determined that under the circumstances, the Minnesota Supreme Court would hold, as did the Oklahoma court in *Georgia-Pacific*, that the description of the collateral as "Assignment Accounts Receivable" in a financing statement does not reasonably identify the collateral as all the debtor's present accounts and accounts which would come into existence in the future, after the filing of the financing statement. While Franklin argues that the addition of the word "[a]ssignment" is superfluous, the Court does not agree. In the view of the Court, the "Assignment Accounts Receivable" description implies that the collateral was either specifically listed and assigned to Franklin in the security agreement (as in *Georgia-Pacific*) or amounted to identifiable accounts receivable which had been assigned to the debtor by a third party and which would serve as the collateral. In short, the description indicates that a security interest was taken in an assignment, and not in the future accounts of the debtor.

Even assuming, however, that the description indicates that the collateral is comprised of accounts rather than an assignment, it cannot be said that the description reasonably identifies the collateral as accounts which would arise in the future, after the filing of the financing statement. First of all, the description does not expressly provide that it relates to future

or not it has been earned by performance." Minn.Stat. § 336.9–106. This later definition incorporates the definition of "contract rights" which existed prior to the amendments, and which were essentially defined as a right to

payment under a contract not yet earned by performance. The Court has used the term "accounts" and "accounts receivable" interchangeably in this memorandum.

accounts.[4] Second, the import of the word "Assignment" in the description logically conveys something which is identifiable and which naturally tends to limit the term "Accounts Receivable" to a definite set of accounts. As such, the description infers that it relates to preexisting accounts receivable, and therefore militates against the conclusion that the description encompasses accounts which come into existence after the date the financing statement was filed.

A secured party such as Franklin is under a duty to reasonably identify the collateral in any financing statement in order to acquire the protection offered perfected secured parties by the Code. Minn. Stat. § 336.9–110. While all that section 9–110 requires is a "minimal" description, it does not permit misleading or ambiguous descriptions. *James Talcott, Inc. v. Franklin National Bank of Minneapolis*, 292 Minn. 277, 194 N.W.2d 775 (1972). This Court is fully convinced that were a prospective creditor to examine Franklin's financing statement, that creditor would not reasonably conclude that the description encompassed future accounts receivable which came into existence after the date of the filing, and therefore the financing statement fails to alert third parties to any need for additional inquiry. The process of describing the collateral subject to a security interest in a financing statement is not a difficult one,[5] and it is somewhat puzzling how Franklin came to describe the collateral in this case as "Assignment Accounts Receivable." While hypertechnical descriptions are obviously unnecessary to perfect a security interest under the Code, when a secured party describes the collateral in a misleading, ambiguous, or incomplete manner, the Code envisions that the filing party bear the loss which results from the inadequate description. *In re California Pump & Mfg. Co., Inc.*, 588 F.2d 717 (9th Cir. 1978); *In re H.L. Bennett Co.*, 588 F.2d 389 (3d Cir. 1978); *In re Katz*, 563 F.2d 766 (5th Cir. 1977); *Georgia-Pacific Corp. v. Lumber Products Co.*, 590 P.2d 661 (Okl.1979). In order to acquire the protection offered by the Code to perfected secured parties, it is not unduly burdensome to require secured parties to describe the collateral subject to their security interest in an unambiguous and clear manner. *See In re Middle Atlantic Stud Welding Co.*, 503 F.2d 1133, 1136 (3d Cir. 1974).

As Franklin does not have priority to the accounts of the debtor which came into existence after its May 21, 1971 financing statement was filed, or the proceeds thereof, Thorp's receipt and retention of money from the debtor was not inconsistent with any rights of Franklin to such proceeds. It necessarily follows that Thorp is not liable for conversion as a matter of law, and is entitled to summary judgment.

Apart from the issue of whether Franklin's description was adequate to perfect a security interest in future accounts, it should be noted that Franklin would not be entitled to summary judgment in any event on the present record. Even assuming that Franklin would prevail on its arguments that its first to file status gives it priority to the proceeds of the debtors' accounts under Minn.Stat. § 336.9–312 and that it never authorized the disposition of the collateral under Minn.Stat. § 336.9–306, a genuine issue of fact exists with respect to Thorp's claim that it amounts to a holder in

---

**4.** The addition of the word "Assignment" to "Accounts Receivable" renders this description distinguishable from those decisions which hold that a description of "accounts receivable" is sufficient to perfect a security interest in future accounts. *See, e. g., In re Varney Wood Products, Inc.*, 458 F.2d 435 (4th Cir. 1972); *In re Platt*, 257 F.Supp. 478 (E.D.Pa.1966); *Continental Oil Co. v. Citizens Trust and Savings Bank*, 57 Mich.App. 1, 225 N.W.2d 209 (1974); *South County Sand & Gravel Co., Inc. v. Bituminous Pavers Co.*, 106 R.I. 178, 256 A.2d 514 (1969). While Franklin correctly notes that the

Code does not require a reference to after acquired property in a financing statement, this principle does not permit a secured party to attain the status of a perfected secured party under the Code as to collateral which is ambiguously and inadequately described in the financing statement.

**5.** The optimum practice for a secured party in most instances is to describe the collateral in the financing statement exactly as it appears in the security agreement.

due course under Minn.Stat. §§ 336.3–302 and 336.9–309. A holder in due course takes priority over an earlier perfected security interest, and the fact that the secured party filed a financing statement does not in itself constitute notice which would preclude holder in due course status. Minn.Stat. § 336.9–309; *see North Central Kansas Production Credit Ass'n v. Boese*, 19 UCC Rep.Serv. 179 (D.Kan.1976); *Citizens Valley Bank v. Pacific Materials Co.*, 263 Or. 557, 503 P.2d 491 (1972). To acquire holder in due course status under Minn. Stat. § 336.3–302, Thorp must have had no actual knowledge at the time it received the instruments that there was a claim to the instruments on the part of Franklin. The question of Thorp's knowledge is peculiarly a factual one and could not on the present record be resolved in the context of a summary judgment motion.

For the reasons expressed herein, IT IS ORDERED that plaintiff Thorp Commercial Corporation's motion for summary judgment dismissing the counterclaim of Franklin National Bank of Minneapolis be and hereby is granted. Further, IT IS ORDERED that the motion of Franklin National Bank for summary judgment in its favor on its counterclaim against Thorp Commercial Corporation be and hereby is denied.